**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MIKHAIL ALEXEEVICH**
**KONDRASHOV,**

         **Plaintiff,**            **CIVIL ACTION NO. 16-cv-14044**

        **v.**               **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

         **Defendant.**
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Mikhail Alexeevich Kondrashov seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff has also filed a reply brief in support of his Motion for Summary Judgment. (Docket no. 16.) This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

     For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income on June 26, 2014, alleging that he has been disabled since his date of birth, October 3, 1988, due to autism spectrum disorder.  (TR 73, 145-53, 166.)  The Social Security Administration denied Plaintiff's claims on September 9, 2014, and Plaintiff requested a *de novo* hearing.  (TR 52-61, 73, 83-84.)  On December 9, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Richard L. Sasena.  (TR 30-51.)   The ALJ issued an unfavorable decision on January 13, 2016, and the Appeals Council declined to review the decision.  (TR 1-6, 16-29.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 5-6) and the ALJ (TR 21-22, 23-24, 25) have set forth factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant adopts the ALJ's recitation of the facts.  (Docket no. 15 at 6.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of June 26, 2014, and that Plaintiff suffered from the severe impairments of autism spectrum disorder and major depressive disorder.  (TR 21.)  Additionally, the ALJ found

that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 21-22.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  simple, routine, repetitive tasks (require little judgment and can be learned in a short period of time); no production line work where somebody else's responsibilities are tied to this person's production; no contact with the general public; and occasional contact with coworkers (not as a team member).

(TR 22-24.)   Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 25.)   Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since June 26, 2014, the date the application was filed.  (TR 19, 25-26.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

4

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

## C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "the ALJ did not employ the proper legal standard in refusing to give the treating source's opinion great weight;" and (2) "there is no substantial evidence in the record to support the ALJ's decision."  (Docket no. 14 at 8-17.)

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.   20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

*of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Plaintiff treated with Bronwyn Murray, Psy.D., a licensed clinical psychologist, intermittently from January 15, 2014 to December 4, 2015. (TR 332-68, 375-84.) On December 18 and 19, 2014, Dr. Murray provided written opinions regarding the functional limitations that Plaintiff has as a result of his autism and depression. (TR 369-74.) Dr. Murray opined that Plaintiff has difficulty reading social cues, reacting quickly and appropriately to others, getting along with others, and inhibiting problematic responses in stressful circumstances, all of which makes any job that involves contact with the public or large numbers of people unsuitable for him. She also opined that Plaintiff has chronic deficits in areas such as planning, sequencing,

7

prioritizing, organization, pacing, task switching, self-monitoring, emotional control, and task completion, which require ongoing external support and/or accommodations.  Dr. Murray then completed a Mental Residual Functional Capacity form on which she checked boxes indicating that Plaintiff has marked and extreme limitations in 18 of 20 mental activities concerning understanding and memory, concentration and persistence, social interaction, and adaption.

The ALJ gave "some weight" to Dr. Murray's opinions because she was Plaintiff's treating specialist, but he discounted them on the basis that the degree of limitation posited in the opinions was inconsistent with Plaintiff's GAF score, treatment history, and admitted activities and abilities.  (TR 24.)  Plaintiff argues that the ALJ's assessment lacks specificity and does not sufficiently explain how Plaintiff's activities and abilities conflict with Dr. Murray's conclusions.  (Docket no. 14 at 11-12.)  And while acknowledging that the ALJ was not required to discuss each of the regulatory factors in his decision, Plaintiff argues that the ALJ gives no indication that he considered the length of Plaintiff's treatment relationship with Dr. Murray, the nature and extent of their relationship, or the supportability of Dr. Murray's opinion.  (*Id*. at 12.)

When the ALJ's assessment of Dr. Murray's opinion is viewed standing alone, Plaintiff's arguments hold some merit.  But when viewed in conjunction with the ALJ's discussion of Dr. Murray's treatment records and the rest of his decision, Plaintiff's argument is unavailing.  (*See* TR 23-24.)  For example, the ALJ considered the nature and extent of Plaintiff's relationship with Dr. Murray by noting that they had monthly appointments together.  He pointed out that Plaintiff's GAF score of 55, assessed by Dr. Murray, was consistent with an ability to perform unskilled work limited to simple, routine, repetitive tasks at a non-production rate pace.  The ALJ also pointed out that Plaintiff's treatment for his impairments was conservative and that Dr. Murray described Plaintiff as "doing ok overall," despite his social difficulties and tendencies to

procrastinate and spend a lot of time on the internet.  The ALJ then found that Plaintiff's treatment and Dr. Murray's description of Plaintiff "doing ok overall" were not indicative of disabling impairments.  The ALJ also noted Plaintiff's ability to get good grades and his productivity working in a computer science lab.  He also discussed Plaintiff's abilities to pass college courses, manage public transportation, fly internationally, tutor others, participate in a weekly math club, and pursue personal relationships, and he found that those abilities, together with Plaintiff's GAF score and conservative treatment, constituted evidence suggestive that Plaintiff can work.  Accordingly, the ALJ's decision is sufficiently specific to make clear to any subsequent reviewers the weight that he gave to Dr. Murray's medical opinions and the reasons for that weight.

Next, Plaintiff argues that the evidence cited by the ALJ to support his decision is not substantial evidence of non-disability.  (Docket no. 14 at 13.)  He then asserts that there is evidence that undermines the ALJ's decision, cites that evidence, and analyzes how that evidence undermines the decision and supports a finding of disability.  For example, Plaintiff argues that he "clearly suffers from severe Autism Spectrum Disorder;" that he has been going to college since 2008 and has failed a bunch of courses; that his trip to Spain is not what the ALJ's phrase "fly internationally" implies, it was a trip to visit his brother, not backpack through Europe; that the main activities of Plaintiff's math club were getting together, talking, and eating food; that he was fired from his paid tutoring job and resigned as a volunteer tutor because his student was not pleased with his tutoring; that he has been described as "a hard-working young man with a significant desire to do well in school," not someone with a poor work ethic as the ALJ suggests; and that his slow processing speed was apparent at the hearing from his delayed responses to the ALJ's questions.  (*Id*. at 13-16.)

In making this argument, Plaintiff essentially points to evidence in the record that could support a determination contrary to the ALJ's and invites the Court to reweigh the evidence and substitute its own judgment for that of the ALJ; but it is not the Court's role to resolve conflicts in the evidence.  *See Brainard*, 889 F.2d at 681 (citation omitted).  The evidence cited by Plaintiff does indeed tend to support Plaintiff's assertions, but nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected.  At most, Plaintiff has shown that the ALJ's decision fell with the ALJ's zone of choice. There is substantial evidence supporting the ALJ's decision, and, if the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion.  *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  Plaintiff also argues that the ALJ erred by failing to discuss in his decision all of the facts cited by Plaintiff.  But "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"  *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)).  Therefore, Plaintiff's Motion should be denied with regard to this issue.

Lastly, Plaintiff argues that the ALJ did not address Plaintiff's ability to respond appropriately to change in the workplace, an ability that Dr. Murray found was extremely limited, and he ignored the VE's hearing testimony that such a limitation would prevent Plaintiff from performing any of the 340,000 jobs that he could otherwise perform.  (Docket no. 14 at 16-17.)  As Plaintiff acknowledges, the ALJ gave Dr. Murray's opinion only "some weight," but Plaintiff asks, "how was this critical issue not deal[t] with by the ALJ in his RFC?"  (*Id*. at 17.)

An ALJ is required to incorporate in a claimant's RFC (and the hypothetical questions to the VE) only those limitations that the ALJ finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ clearly found the extreme degree of limitation assessed by Dr. Murray to be incredible and inconsistent with the record evidence.  (TR 24.)  And it is evident that the ALJ did not adopt this portion of Dr. Murray's opinion because he did not include it in Plaintiff's RFC.  To the extent that Plaintiff argues that the ALJ erred because he did not explicitly address this limitation in his decision, Plaintiff's argument lacks merit, as he cites no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## VI.    CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 14) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 15).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 12, 2018            s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 12, 2018            s/ Leanne Hosking
                                     Case Manager